# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMBETH MAGNETIC STRUCTURES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 16-538 |
| v. | ) ) | Judge Cathy Bissoon |
| SEAGATE TECHNOLOGY (US) HOLDINGS, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |
| LAMBETH MAGNETIC STRUCTURES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 16-541 |
| v. | ) ) | Judge Cathy Bissoon |
| WESTERN DIGITIAL CORPORATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

For the reasons stated below, Defendants' Motions to Compel Documents Withheld as Privileged by Plaintiff (Civil Action No. 16-538, Doc. 87; Civil Action No. 16-541, Doc. 98) will be **DENIED**.

This Order concerns discovery in two consolidated patent infringement cases in which Plaintiff Lambeth Magnetic Structures, LLC ("LMS") alleges, in civil action numbers 16-538 and 16-541 respectively, that Seagate Technology (US) Holdings and Seagate Technology, LLC (collectively, the "Seagate Defendants" or "Seagate"); and Western Digital Corporation, Western

Digital Technologies, Inc., Western Digital (Fremont), LLC, Western Digital (Thailand) Company Limited, Western Digital (Malaysia) SDN.BHD and HGST, Inc. (collectively the "Western Digital Defendants" or "Western Digital") infringe Plaintiff's patent, United States Patent No. 7,128,988 (the "'988 patent").

On November 14, 2017, after receiving the parties' Position Statements and Responses regarding the instant discovery dispute, the Court ordered briefing on Defendants' requested access to documents withheld as privileged by Plaintiff (Civil Action No. 16-538, Doc. 82; Civil Action No. 16-541, Doc. 91). Pursuant to that Order, Defendants timely filed their respective Motions to Compel with supportive briefing (Civil Action No. 16-538, Docs. 87-89; Civil Action No. 16-541, Docs. 98-101). Plaintiff timely opposed (Civil Action No. 16-538, Docs. 95-96; Civil Action No. 16-541, Docs. 107-108). Defendants' Motions to Compel are now ripe for this Court's consideration.

**Summary**

Defendants seek access to three categories[1] of documents: (1) Dr. David N. Lambeth's ("Lambeth's") communications with his academic colleagues concerning reverse engineering of Defendants' products, (2) LMS's communications with ▮▮▮▮▮▮▮▮, a company hired to perform reverse engineering tests for the purpose of establishing Lambeth's patent infringement

---

[1] The Seagate and Western Digital Defendants categorize these documents slightly differently, with Seagate using four categories rather than three. (Compare Seagate's Brief in Support of Motion to Compel, hereafter "Seagate's Brief," Civil Action No. 16-538, Doc. 89, with Western Digital's Brief in Support of Motion to Compel, hereafter, "Western Digital's Brief," Civil Action No. 16-541, Doc. 101-2.) The specific documents to which Defendants seek access are listed, respectively, in the first exhibit to each supporting brief. (Seagate's Brief at Ex. 1; Western Digital's Brief at Ex. 1). The documents sought by Seagate and Western Digital largely overlap, but the lists are not identical. Further, Western Digital seeks production of 613 listed documents, while Seagate seeks production of its enumerated documents as well as "all communications relating to" negotiation of Plaintiff's litigation finance agreement. These differences have no effect on the Court's analysis.

case, and (3) LMS's communications with litigation-funding organizations, including LMS's agreement with one of those organizations. For each category of documents, Plaintiff has withheld production on the grounds that the documents are subject to attorney-client privilege, the work product privilege or both. Plaintiff contends that these documents were prepared for litigation concerning the '988 patent or were prepared pursuant to communications with attorneys. As to Plaintiff's communications with his colleagues on reverse engineering, Defendants counter that many of these documents are communications between non-attorneys and they were not prepared in anticipation of litigation. As to the ▮▮▮▮▮▮ testing documents, they argue that Plaintiff has waived any claim to privilege by citing them in Plaintiff's infringement contentions and selectively relying on them to show infringement. And, Defendants argue that Plaintiff's communications with litigation funding companies are not privileged due to the lack of a common legal interest between Plaintiff and these firms.

Upon consideration of the parties' arguments, and for the reasons stated below, the Court finds that the materials sought are privileged under the work product doctrine. Because the Court finds that the work product doctrine shields these documents from discovery, it need not address the parties' arguments concerning the availability of attorney-client privilege.

**Legal Standard**

"It is well recognized that the federal rules allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999). Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1). A qualified privilege exists, however, for "documents and tangible things that are prepared in anticipation of litigation or for trial by and for another party or its representative (including the other party's attorney, consultant, surety,

indemnitor, insurer, or agent)." Id. at 26(b)(3)(A).  Under this Rule, the privilege applies when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1264 (3d Cir. 1993) (internal citation omitted).  In evaluating the facts of the situation, the Court must look "to the state of mind of the party preparing the document or . . . the party ordering preparation of the document" and assess whether the party has an "objectively reasonable" belief that litigation is forthcoming.  Id. at 1260.  The objective test for the reasonableness of the party's belief has two requirements: "the documents were prepared (1) at a time when litigation was reasonably foreseeable; and (2) primarily for the purpose of litigation."  Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., 2010 WL 4537002, at *2 (M.D. Pa. Nov. 3, 2010) (citing United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990)).

If the work product privilege is established for particular documents, the party seeking discovery can overcome the privilege by showing "that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. Pro. 26(b)(3)(A)(ii).  In addition, the party seeking discovery can overcome the privilege by showing that it has been waived.  E.g., Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1429 (3d Cir. 1991) (a party may waive this protection through disclosure of documents to an adversary).

Plaintiff, as the party asserting the work product privilege, bears the burden of proof. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000). Accordingly, the Court begins with Plaintiff's evidence.

**Plaintiff's evidence supporting its assertion of privilege**

Under seal, Plaintiff has submitted two declarations in support of his work product assertions as well as two consulting agreements with his academic colleagues.[2] The Court has examined these exhibits with particular attention to whether they show that the documents sought by Defendants were prepared at a time when litigation was reasonably foreseeable and were prepared primarily for litigation purposes.

Lambeth's declaration states, under penalty of perjury, that he first decided to investigate whether Defendants' products were infringing his '988 patent, the subject of the instant litigation, in 2008. In October 2008, to obtain assistance in pursuit of this investigation (in the form of product testing and reverse engineering), Lambeth contacted ▇▇▇▇▇▇ and ▇▇▇▇▇▇, ▇▇▇▇▇▇▇▇▇▇▇▇ with relevant expertise. By early 2009, Lambeth began reaching out to attorneys to seek representation to enforce his patent. The law firms he contacted included ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Following these law firm contacts, Lambeth formally engaged ▇▇▇ and ▇▇▇ as consultants on June 10, 2009, as is evident from the consulting agreements attached to Plaintiff's Opposition Briefs. The consulting agreements each state ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Exs. 3-4 to Opposition to Seagate; Exs. 3-4 to Opposition to Western Digital.) Under advice from counsel at ▇▇▇▇, and in consultation with ▇▇▇▇▇▇, Lambeth directed reverse engineering work

---

[2] Unless otherwise cited, the facts pertaining to Plaintiff's assertions of privilege are contained in the sealed exhibits to Plaintiff's Opposition to Seagate's Motion to Compel (Civil Action No. 16-583, Doc. 96) and Plaintiff's Opposition to Western Digital's Motion to Compel (Civil Action No. 16-541, Doc. 108). These sealed exhibits are, respectively, Lambeth's Affidavit, Jimmy Goo's Affidavit, Lambeth's consulting agreement with ▇▇▇, and Lambeth's consulting agreement with ▇▇▇.

on potentially infringing products from 2009 to 2010. At the same time, Lambeth had extensive conversations with counsel at ▮▮▮▮▮ about enforcing the '988 patent against Defendants and others, although these conversations did not culminate in a formal engagement. In the fall of 2010, Lambeth contacted other attorneys and law firms about representation, enforcement of the '988 patent and its foreign counterparts, and other possible transactions involving the patent, such as a transfer of patent rights to facilitate litigation. These discussions included communications with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Lambeth then sold the '988 patent and related patents to an Acacia entity in December 2010, pursuant to an agreement that allowed Lambeth to reacquire the patents under certain conditions. This agreement, in turn, ultimately led to litigation and Lambeth's reacquisition of the patents in mid-2013. During the period in which Lambeth no longer owned the '988 patent, he engaged in discussions with ▮▮▮▮▮▮▮▮ about Lambeth's dispute with Acacia and his potential reacquisition and assertion of the '988 patent.

Once Plaintiff regained the '988 patent, he again sought legal advice from ▮▮ on enforcement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Documents sought in Defendants' Motions to Compel**

*1. Lambeth's communications with his academic colleagues, ▮▮▮▮▮▮▮▮, concerning reverse engineering of Defendants' products*

Defendants seek Lambeth's communications with ▮▮▮▮▮▮▮▮ from October 13, 2008, through March 26, 2014, which are labeled in Plaintiff's privilege log as concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or

███████████████████████████████████████ (See Ex. 1 to Western Digital's Brief; Ex. 1 to Seagate's Brief.) Defendants argue that these documents, some of which precede the instant litigation by seven years, cannot have been prepared at a time when litigation was reasonably foreseeable and therefore cannot be subject to the work product privilege.[3] (Seagate's Brief, p. 6; Western Digital's Brief, p. 5.) Supporting this argument, Defendants cite Montgomery County v. MicroVote Corp., 175 F.3d 296, 305 (3d Cir. 1999) (Greenberg, J., concurring), which answers the question "[h]ow remote a prospect can the litigation be for the anticipation to be 'reasonable'?" by stating that "[a] party must show that there existed an identifiable specific claim or impending litigation when the materials were prepared" (internal quotation marks omitted).

---

[3] As to two documents, Seagate argues that LMS lacks standing to claim work product privilege during the period from December 8, 2010 to July 27, 2013, because an Acacia entity rather than Lambeth owned the '988 patent during this period. (Seagate's Brief, p. 5.) Seagate grounds this argument on RLS Associates, LLC v. United Bank of Kuwait, PLC, 2003 WL 1563330, at *5 (S.D.N.Y. Mar. 26, 2003), which found that several documents were not subject to work product immunity because they were not prepared "by or on behalf of [Defendant]." It is true that LMS, not Lambeth or Acacia, is the Plaintiff in the instant cases. In the Third Circuit, standing to assert work-product immunity generally extends to nonparties when: the document would otherwise be privileged if the nonparty were a party; there is an alignment of interest between the nonparty and the party; there is a nexus with the instant litigation; and the circumstances implicate the purposes of the privilege—preventing discovery from chilling the parties' ability to prepare their cases, preventing free-loading off adversaries, and preventing disruption of ongoing litigation. See Serrano v. Chesapeake Appalachia, LLC, 298 F.R.D. 271, 276-280 (W.D. Pa. 2014); Patel v. Kensol-Franklin, Inc., 2016 WL 1109874, at *2 (M.D. Pa. Mar. 22, 2016). Here, the documents fall within this extension to nonparties. Lambeth is the majority shareholder and founder of Plaintiff, LMS and he maintained a contractual interest in the patent during Acacia's ownership. Lambeth has always retained custody of the materials for which he seeks protection. As explained below, he communicated with ██████ about reverse engineering products in anticipation of the instant litigation. Lambeth would thus be entitled to assert the privilege if he were a party. Additionally, Lambeth's interests aligned with LMS's during the relevant period; Lambeth's actions led to the instant litigation and he is a participant in the litigation; and granting access to reverse engineering communications would tend to chill future efforts to conduct similar research in anticipation of litigation.

The Court finds, however, based on Lambeth's declarations, that Lambeth has established an objectively reasonable belief that litigation to enforce the '988 patent was forthcoming as of his initial consultations in October 2008. In other words, an enforcement action for the '988 patent constituted an "identifiable . . . impending litigation," id., and Lambeth reasonably foresaw this action at the time he undertook testing of possibly infringing products. Cf. In re Gabapentin Patent Litigation, 214 F.R.D. 178, 184-186 (D.N.J. 2003) (finding that materials prepared in connection with the patent application process—before the patent issues—may qualify for work product protection if "litigation (in the form of a patent infringement action) is almost certain to follow" based on objective circumstances).

The entire basis for Lambeth's reverse engineering communications with ▮▮▮▮▮▮, which began in 2008, was to prepare for litigation by determining which products contained technologies potentially infringing the '988 patent. As Plaintiff states, ▮▮▮▮▮▮  (Opposition to Seagate, p. 5; Opposition to Western Digital, p. 5.) Lambeth's continuous communications concerning patent enforcement show a somewhat tortuous, but by no means unforeseeable, path. This path led Lambeth from his initial consultations concerning reverse engineering of Defendants' products, to his formal engagement of ▮▮▮▮▮▮ in June 2009, and ultimately to the instant litigation. Plaintiff's declarations evidence a sincere and objectively manifest desire, throughout his work with his colleagues, to enforce the '988 patent through litigation. For these reasons, the Court finds that Lambeth's communications with ▮▮▮ and

████ concerning reverse engineering are subject to protection under the work product privilege.[4]

2. *LMS's communications with* ████████

Defendants also request access to documents from ████████, a company Plaintiff used in 2014 to perform reverse engineering tests of Defendants' products for the purpose of establishing Lambeth's patent infringement case. The Court finds that these documents naturally fall within the work product privilege for the same reasons as the reverse engineering communications with ████████ analyzed above. However, rather than contest the application of this doctrine, Defendants argue that Plaintiff has waived any claim to privilege by selectively citing the ████████ tests in its infringement contentions and incorporating them by reference into its interrogatory responses. (Seagate's Brief, p. 1; Western Digital's Brief, p. 8.) Such reliance, Defendants contend, amounts to using privilege as both a sword and a shield because Plaintiff both uses the tests to show infringement and seeks the benefit of privilege to prevent disclosure of potentially unfavorable test results. Id.

Closely examining the manner in which Plaintiff draws on the ████████ materials, the Court disagrees with Defendants. As explained below, Plaintiff has not yet relied on these materials as evidence to support its infringement claims. Thus, Plaintiff has not waived its privilege.

---

[4] Seagate has not argued that it has a substantial need for these materials and that it will suffer undue hardship in their absence. Western Digital has put forward such an argument based on speculation that these communications might disclose the nature of certain processing conditions referenced in the '988 patent that bear on whether the patent contains sufficient precision to be enabled. (Western Digital's Brief, p. 7-8.) The Court finds that Western Digital has not established a need for these documents nor that it will suffer undue hardship if they are not produced.

In Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC, 2010 WL 4537002 (M.D. Pa. Nov. 3, 2010), the court addressed precisely the issue of whether a party waives the work product privilege as to testing cited in preliminary infringement contentions.[5] In particular, the court concluded that "preliminary infringement contentions provide notice of the accusing party's specific infringement theories, and are not considered evidence." Id. at *2 (citing Fast Memory Erase, LLC v. Spansion, Inc., 2009 WL 4884091, at *2 (N.D. Tex. Dec. 16, 2009)). The Kimberly-Clark court also found, however, that if the plaintiff asserting work product privilege relied on the testing at issue as evidence to support infringement claims, then justice would require that defendants have a right to the materials in order to defend themselves. Id. And the Kimberly-Clark court noted that if the plaintiff "actually relies upon this data, [defendant] . . ., by voluntarily disclosing the materials in such a situation, . . . would be waiving the privilege." Id. The Court of Appeals for the Third Circuit has provided additional guidance that bears on whether the disclosure of work product to an adversary waives the privilege: if such disclosure is consistent with the purpose of the privilege (enabling clients to obtain advice without fear that it will be used against them in litigation), then disclosure alone does not waive the privilege. Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1429 (3d Cir. 1991).

This Court agrees with the Kimberly-Clark court that the appropriate distinction to be drawn is whether the party asserting the privilege at the present stage of the patent litigation relies upon the test results as evidence to support infringement or merely cites test results to

---

[5] The Local Patent Rules for the Western District of Pennsylvania refer to these preliminary disclosures as the "Disclosure of Asserted Claims and Infringement Contentions" rather than "preliminary infringement contentions." See LPR 3.2. For ease of reference the Court will refer to these as Plaintiff's "preliminary infringement contentions" or "preliminary disclosures."

place an opposing party on notice. This principle also is consistent with the structure of the Local Patent Rules for the Western District of Pennsylvania, which require a plaintiff to disclose within thirty days of the initial scheduling conference, "as specific[ally] as possible," the asserted infringing technology. LPR 3.2(a)-(b)(2). Finding a waiver of privilege as to any testing cited at this early stage of litigation would cut against both the purpose of the privilege (protecting clients' ability to seek preparatory advice without fear) and the purpose of the local rule (providing defendants with early notice of specific claims).

Here, the test results Plaintiff cites in its preliminary infringement contentions are macro-level external and internal photographs of the accused devices showing the location of asserted structures, as well as several images showing a microscopic structure within the accused device. (Ex. 5-A to Seagate's Brief, Doc. 89-7.) Plaintiff's preliminary disclosures were not provided to the Court to establish infringement, nor were they filed on the docket until the instant dispute, when Seagate attached them under seal. Cf. Koninklijke Philips Elecs. N.V. v. Zoll Med. Corp., 2013 WL 812484, at *2 (D. Mass. Mar. 4, 2013) (relying on public nature of document in finding waiver). The purpose of these images in context was to place Defendants on notice of the specific nature of Plaintiff's claims in compliance with the local patent rule. Thus, Plaintiff has not waived its work product privilege merely by citing to them in its preliminary infringement contentions.[6] However, should Plaintiff rely on the ■■■■■■■ tests at a subsequent stage of these proceedings as evidence to demonstrate infringement, the Court will find that Plaintiff has waived its privilege and will require production of these materials.

---

[6] The fact that Plaintiff summarily incorporated its preliminary disclosures into its interrogatory responses does not alter this analysis.

*3. LMS's communications, including agreements, with litigation-funding organizations* ▮
▮

Finally, Defendants seek production of Plaintiff's communications with ▮ ▮ from October 2010 to April 2013. Plaintiff's declarations identify these individuals as follows: ▮ ▮ ▮ ▮ ▮ ▮. The communications in the relevant periods concerned ▮ ▮ in anticipation of litigation to enforce the patent and, later, in anticipation of litigation to reacquire the '988 patent from Acacia. (Lambeth Declaration at ¶¶ 5-8.) ▮ ▮ ▮

Id. As previously found, these communications took place during a period when Lambeth actually and reasonably foresaw litigation. And, the evidence clearly establishes that these communications were primarily, perhaps exclusively, for the purpose of preparing for litigation.

Defendants' arguments premised on the non-legal nature of Plaintiff's relationships with ▮ are unavailing. Even if the Court were to fully credit this argument and consider the relationships to be commercial, the materials nonetheless fall within work-product immunity because they were communications with Plaintiff's agents and in anticipation

of litigation.[7] See Fed. R. Civ. Pro. 26(b)(3)(A) (protecting "documents . . . prepared in anticipation of litigation . . . by or for another party or its representative (including the other party's . . . consultant . . . or agent)").

Defendants also seek an unredacted copy of Plaintiff's agreement with ▇▇▇▇, which contains information relevant to LMS's and ▇▇▇▇▇▇▇▇▇▇▇▇▇. Like the materials discussed above, Plaintiff's agreement with ▇▇▇▇ was undisputedly prepared in anticipation of the instant litigation and for the purpose of pursuing the litigation. As a result, all of these materials are shielded under work product protection.[8]

\* \* \*

For the reasons stated above, the Court hereby orders that Defendants' Motions to Compel (Civil Action No. 16-538, Doc. 87; Civil Action No. 16-541, Doc. 98) are **DENIED**.

IT IS SO ORDERED.

December 19, 2017

s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[7] Defendants cite several cases for the proposition that commercial communications and fee arrangements cannot be privileged. However, these cases primarily analyze the application of the attorney-client privilege, for which a lawyer-client relationship is essential. E.g., Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999) ("The attorney-client privilege does not shield fee arrangements."); Net2Phone, Inc. v. Ebay, Inc., 2008 WL 8183817, at \*7-8 (D.N.J. June 26, 2008) (for the common interest doctrine under attorney-client immunity to apply, the parties' interests cannot be those of adverse parties "negotiating at arm's length a business transaction" (internal citation omitted)).

[8] Defendants do not argue, nor have they shown, that there is a substantial need for these materials and that they will suffer undue hardship in their absence.