IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMBETH MAGNETIC STRUCTURES, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., WESTERN DIGITAL (FREMONT), LLC, WESTERN DIGITAL (THAILAND) COMPANY LIMITED, WESTERN DIGITAL (MALAYSIA) SDN.BHD, and HGST, INC.<br><br>　　　　　　　Defendants. | Civil Action No. 2:16-cv-00541-CB<br><br>Judge Cathy Bissoon<br><br>*Electronically Filed* |

**WESTERN DIGITAL'S BRIEF IN SUPPORT OF ITS MOTION TO RECONSIDER THE COURT'S APRIL 11, 2018 ORDER AMENDING CASE SCHEDULES (ECF NO. 124) OR, IN THE ALTERNATIVE, TO AMEND THE CASE SCHEDULE**

On March 28, 2018, two weeks after the Court entered the parties' agreed schedule for expert reports, LMS wrote to Western Digital asking that Western Digital stipulate to an extension of time to file expert reports. Western Digital declined. LMS never provided a second proposal, indicated in any way that it still sought more time, or informed Western Digital that it would seek court intervention. Western Digital was therefore surprised when two weeks later, on April 10, 2018 at 11:44 p.m., LMS unilaterally moved (on an expedited basis) to amend the case schedule.

When LMS first approached Western Digital regarding its proposed extension, there were weeks left before opening reports were due. Had LMS moved at that time, it would not have needed to be heard on an expedited basis, and Western Digital would have explained to the Court that it opposed LMS's request because (1) it creates scheduling conflicts that prejudices Western Digital's ability to submit its own expert report, and (2) it is based on unjustified grounds. But

LMS waited weeks. With expert reports due in days, LMS filed its motion on an expedited basis, and stripped Western Digital of the opportunity to respond. Western Digital is now forced to raise its concerns as a motion to reconsider. For the following reasons, Western Digital respectfully requests the Court reconsider and deny LMS's motion, or in the alternative grant Western Digital's proposed schedule.

**I.     LMS's Schedule Prejudices Western Digital Ability To Respond To LMS's Opening Reports**

At the March 8, 2018 settlement conference, the Court set forth the following deadlines:

|  | **Original Schedule Set by Court on March 8, 2018 (ECF No. 119)** |
|---|---|
| **Opening Reports** | April 9, 2018 |
| **Rebuttal Reports** | May 9, 2018 |
| **Reply reports** | May 23, 2018 |
| **Expert Deposition Period** | May 31, 2018 to July 2, 2018 |
| **Opening Summary Judgment** | August 17, 2018 |
| **Response to Summary Judgment** | September 21, 2018 |

On March 14, 2018, in response to LMS's request for additional time, LMS and Western Digital agreed to an extension of the deadlines in an effort to compromise as follows:

|  | **Original Schedule Set by Court on March 8, 2018 (ECF No. 119)** | **Joint Motion to Amend Schedule (ECF No. 120, 121)** |
|---|---|---|
| **Opening Reports** | April 9, 2018 | April 16, 2018 |
| **Rebuttal Reports** | May 9, 2018 | May 23, 2018 |
| **Reply reports** | May 23, 2018 | June 6, 2018 |
| **Expert Deposition Period** | May 31, 2018 to July 2, 2018 | June 11, 2018 to July 11, 2018 |
| **Opening Summary Judgment** | August 17, 2018 | August 17, 2018 |
| **Response to Summary Judgment** | September 21, 2018 | September 21, 2018 |

When negotiating and agreeing to the above schedule, Western Digital was careful to keep in mind its own experts' schedules (including travel plans), particularly that of its lead

2

technical expert, Dr. Mark Kryder.  Dr. Kryder had a long-planned vacation from April 29, 2018 until mid-May, where he will be out of email contact.  Under the previously stipulated schedule above, Dr. Kryder's vacation would fall in the middle of the period for rebuttal reports, giving Western Digital sufficient time to work with Dr. Kryder both before and after his vacation.  Thus, Western Digital released Dr. Kryder for his vacation.

But not less than two weeks after the entry of the revised schedule, LMS requested another extension for its opening report.  (ECF No. 123-5).  On March 28, 2018, Western Digital informed LMS that is opposed the extension because the reasons LMS offered were not justified (as they had never been raised before) and because these dates provided conflicts with Western Digital's expert's and counsel's schedules.  (*Id.*).  LMS did not attempt to work out any compromise, and indeed remained silent on the matter for nearly two weeks, leading Western Digital to believe the issue would not be raised.  LMS instead waited until April 10, 2018, five days before the opening reports were due, to file its motion to extend the deadlines.

LMS's proposal limits Western Digital's ability to respond to LMS's opening infringement report.  First, while it gives LMS an extra two weeks to prepare its opening report (now a total of 8.5 weeks since the close of fact discovery), Western Digital does not receive a reciprocal extension.  Instead, Western Digital has only five weeks to respond to LMS's report.  In this five week period, Western Digital is required to analyze LMS's infringement theories (many of which will be explained for the first time), develop any appropriate testing, perform any required testing, analyze the results, and draft a rebuttal report.  If LMS could not perform these tasks in eight weeks (having the benefit of understanding its own theories), it is hard to imagine how Western Digital is expected to complete them in five weeks.  Western Digital's alternative schedule proposed herein accounts for this issue.

Second, LMS's proposed dates conflict with Western Digital's expert's schedule. As described above, Dr. Kryder, Western Digital's technical expert, has prepaid, planned international travel with limited cellular or Wi-Fi access beginning April 29, 2018. He has already changed his travel plans to accommodate LMS's first request for an extension. He cannot change his plans again, particularly at this late stage. If Western Digital is unable to obtain LMS's opening report by April 25, 2018, then the earliest Dr. Kryder will be able to review LMS's opening report is mid-May, approximately two weeks prior to the new deadline for rebuttal reports. This would substantially prejudice Western Digital, as Dr. Kryder will be unable to direct any required testing until after he returns from his pre-planned travel. Thus, Western Digital will be forced to perform the testing that LMS struggled to complete in eight weeks in a mere two weeks.

For this reason, Western Digital respectfully asks that if the Court is not inclined to reconsider its order granting LMS's requested relief, that the Court instead grant a compromise position – instead of giving LMS a 14 day extension on its opening report, Western Digital asks that LMS be given a 9 day extension, to April 25, 2018, which would allow Western Digital to meet with Dr. Kryder regarding LMS's opening report on April 26-28, prior to his trip.[1] Additionally, Western Digital requests an extension to its own rebuttal deadlines to give Western Digital the additional two weeks that LMS gave itself. This in turn would push the other associated dates as follows.

---

[1] Due to the urgency of getting this brief on file as soon as possible, Western Digital is unable to provide a supporting declaration of Dr. Kryder, but will provide one to the Court if requested.

|  | **Original Schedule Set by Court on March 8, 2018 (ECF No. 119)** | **Joint Motion to Amend Schedule (ECF No. 120, 121)** | **LMS's Opposed Motion to Amend (ECF No. 123, 124)** | **Western Digital's Proposed Compromise** |
|---|---|---|---|---|
| **Opening Reports** | April 9, 2018 | April 16, 2018 | April 30, 2018 | April 25, 2018 |
| **Rebuttal Reports** | May 9, 2018 | May 23, 2018 | June 6, 2018 | June 15, 2018 |
| **Reply reports** | May 23, 2018 | June 6, 2018 | June 20, 2018 | June 29, 2018 |
| **Expert Deposition Period** | May 31, 2018 to July 2, 2018 | June 11, 2018 to July 11, 2018 | June 25, 2018 to July 25, 2018 | July 9, 2018 to August 9, 2018 |
| **Opening Summary Judgment** | August 17, 2018 | August 17, 2018 | August 31, 2018 | September 6, 2018 |
| **Response to Summary Judgment** | September 21, 2018 | September 21, 2018 | October 5, 2018 | October 11, 2018 |

II.     **The Reasons For LMS's Request Were Unjustified**

Irrespective of the unfairness of the schedule proposed by LMS, Western Digital opposes LMS's motion because of the alleged justifications for the extension. The allegedly late production of "scripts" and late production of a monitor wafer were never raised to Western Digital until LMS requested its second extension, and should not be a valid reason for extending expert discovery, especially in a way that increases costs to the parties and prejudices Western Digital given its expert's situation. Western Digital addresses each of these issues in turn.

*Scripts* – The issue of "scripts" came up during a 30(b)(6) of a Western Digital witness taken on February 1. Western Digital had already provided documents describing the manufacturing process for its accused products, as well as answered several interrogatories regarding that process. Western Digital's witness testified at his deposition that there were additional documents that acted as a step-by-step recipe for how to make the products, which included thousands of steps having nothing to do with this litigation, and only a few steps that had any relevance whatsoever. Despite the minimal relevance of these documents, following

5

this deposition, Western Digital agreed to produce and did produce all of the requested scripts it had on hand prior to the February 28 close of fact discovery.  However, LMS requested additional scripts that were located on archived backup tapes, which was burdensome to retrieve.  Without asking for any financial contribution for doing so, Western Digital undertook the expensive process of retrieving and restoring the backup tapes from off-site storage, and completed the production by March 7, just one week after the close of fact discovery.  LMS then waited nearly two weeks to review those scripts and then requested more documents it contended were referenced in the scripts.  Again despite this tardy request, Western Digital immediately located and produced all subsequent documents by March 21, 2018.  LMS also raises an allegedly delayed stipulation regarding these scripts, but fails to mention that this stipulation was undisputed and regarding authenticity only, and that it was LMS that delayed reviewing and editing the stipulations on authenticity.  Western Digital believes there is no conceivable way this authenticity stipulation or the scripts on certain processing conditions themselves affect LMS's opening expert report, which is directed to infringement of the accused products.

*Monitor wafers* – LMS also alleges delay of certain Western Digital "samples," but admits these samples are not the Western Digital and HGST accused products that were provided months prior to the close of discovery, but instead were samples LMS requested just three months prior to the close of fact discovery and 18 months into the litigation.  (*See* Davis Dec. ¶¶ 20, 21, ECF No. 123-1).  Monitor samples are made by completely different processes than the accused products and in many instances do not contain the accused layers that LMS focuses on in this case.  For this reason, the monitor wafers are simply not relevant to the question of infringement.  In fact, they are similar to the modeling samples that the Court already held to be irrelevant and not subject to discovery.  (ECF No. 93.)  Nevertheless, in order to avoid bringing

another dispute to the Court, Western Digital agreed to produce monitor samples, but Western Digital informed LMS that these monitor samples are not samples that are kept after use. Rather, Western Digital had to have them specially created for LMS and receive approval to remove materials from the manufacturing line. Western Digital was able to complete this production prior to the close of fact discovery, providing a Western Digital-branded monitor wafer on January 26, 2018 and a HGST-branded monitor wafer on February 6, 2018. However, LMS then requested *another* monitor wafer from HGST. Western Digital informed LMS immediately that there would be time and cost of providing this additional monitor wafer, and LMS agreed to bear the cost. LMS did not raise that the timing of the provision of this wafer would affect its expert reports, and in fact explicitly agreed to the expert report schedule knowing that this third monitor wafer was still forthcoming. Western Digital was able to provide this third monitor wafer on March 20, 2018.

    LMS argues it needs more time to test these monitor wafers, but states that its expert never even performed any testing on the other two monitors produced in January and early February until *more than seven weeks after that production*, because LMS was waiting for the third sample and did not want to inconvenience its expert. (*See* Davis Dec. ¶25-27, ECF No. 123-1). This is a completely unjustified delay and makes no sense since the samples are completely separate. LMS cannot continue to demand more samples as a way to continuously push back testing it wants to perform.[2]

---

[2] LMS also justifies its request for an extension on an updated financial document it states Western Digital owes it. This is not true. Western Digital produced the sales document in question on January 5, 2018. (*See* Davis Dec. ¶2, ECF No. 123-1). For the first time, three months after that document was produced and after the close of fact discovery, LMS asked Western Digital on March 23 to provide a "pivot table" version of this Microsoft Excel document. This is not a document that exists in the ordinary course of business and is outside the bounds of Federal Rule of Civil Procedure 26, but nonetheless, Western Digital agreed to try

For the foregoing reasons, Western Digital requests the Court reconsider its order granting LMS's motion, or in the alternative to enter Western Digital's proposed order amending the case schedule in a way that does not further prejudice Western Digital.

Dated:  April 11, 2018                                  Respectfully submitted,

By: */s/ Lauren K. Sharkey*
    Henry M. Sneath (PA I.D. No. 40559)
    Amber Reiner
    HOUSTON HARBAUGH, P.C.
    Three Gateway Center
    401 Liberty Avenue, 22nd Floor
    Pittsburgh, PA  15222
    (412) 281-5060
    (412) 281-4499 (fax)
    sneathhm@hh-law.com
    reineral@hh-law.com

    Douglas E. Lumish (CA Bar No. 183863)
    Richard G. Frenkel (CA Bar No. 204133)
    Michelle P. Woodhouse (CA Bar No. 260669)
    LATHAM & WATKINS LLP
    140 Scott Drive
    Menlo Park, CA 94025
    650.328.4600
    650.463.2600 (fax)
    doug.lumish@lw.com
    rick.frenkel@lw.com
    michelle.woodhouse@lw.com

    Lauren K. Sharkey (IL Bar No. 630147)
    LATHAM & WATKINS LLP
    330 North Wabash Avenue, Suite 2800
    Chicago, IL 60611
    312.876.7700
    312.933.9767 (fax)
    lauren.sharkey@lw.com

    Allison K. Harms (CA Bar No. 299214)
    LATHAM & WATKINS LLP
    505 Montgomery St. #2000
    San Francisco, CA 94111

---

to create it and provide it.  Now that the Western Digital employee who maintains these sorts of documents has returned from vacation, Western Digital provided the modified version of the January 2018 document today.

415.391.0600
415.395.8095 (fax)
allison.harms@lw.com

*Attorneys for the Western Digital Defendants*